UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

─────

GEORGE ALAN PRICE,

                           Petitioner,                        Case No. 1:12-cv-146

v.                                                  Honorable Robert J. Jonker

CINDI CURTIN,

                           Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 20 to 30 years, imposed by the Calhoun County Circuit Court on September 14, 2009, after Petitioner pleaded *nolo contendere* to second-degree murder, MICH. COMP. LAWS § 750.317. In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.     [PETITIONER] SHOULD BE ALLOWED TO WITHDRAW HIS PLEA WHERE HIS ATTORNEY RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO RECOGNIZE AND INVESTIGATE A POSSIBLE DEFENSE TO THE HOMICIDE CHARGE, SPECIFICALLY THAT THE DEFENDANT DID NOT CAUSE THE COMPLAINANT'S DEATH.

    II.    [PETITIONER] MUST BE RESENTENCED BECAUSE OV 6 SHOULD NOT HAVE BEEN SCORED AS IF [PETITIONER] HAD BEEN CONVICTED OF FIRST DEGREE MURDER. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO ITS SCORING.

Respondent has filed an answer to the petition (docket #8) stating that the grounds should be denied.

Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit.

Accordingly, I recommend that the petition be denied.

**Procedural History**

### A.     Trial Court Proceedings

Petitioner and his co-defendant, Deleo Richardson-Powell (Powell), were accused of beating and robbing Rick Stevens, causing a plaque rupture to his coronary artery, which resulted in his death.  Petitioner and Powell were charged with open murder, larceny from a person and conspiracy to commit larceny.

Petitioner and Powell were bound over for trial on the charges following a preliminary examination held on April 23, 2009.  At the preliminary examination, Barbara Asher testified that she was acquainted with Petitioner and Deleo Richardson-Powell.  (Preliminary Examination (PE) Tr. 6, 29, docket #11.)  On the night of November 12, 2008, Asher saw Petitioner at her sister's house.  (PE Tr. 7-9.)  While they were talking outside, Powell came up and told Petitioner that they "had some business to handle."  (PE Tr. 9.)  Asher left the men and began walking toward a liquor store on Southwest Capital to meet her mother.  (PE Tr. 10.)  While she was on the way, Petitioner and Powell ran past her toward an older gentleman who was walking ahead of them.  (PE Tr. 11.)  Powell struck the man in the side of the face, causing him to fall to the ground.  (PE Tr. 12.)  Petitioner then kicked and stomped on the man while he lay on his back.  (PE Tr. 15-16.)  Powell sat on the man and struck him in the face at least ten times.  (PE Tr. 17-19.)  Powell and Petitioner also started going through the man's pockets.  (PE Tr. 17-18.)  At one point, Asher heard Petitioner say, "Hit him again.  I almost got his wallet."  (PE Tr. 18.)  While the assault continued, Asher ran past them to reach the liquor store.  (PE Tr. 20-21.)

Asher testified that she stayed at the liquor store for five or ten minutes and then began walking back in the direction where she had seen the man being assaulted.  (PE Tr. 21.)

Asher saw the man up and walking, although he was staggering and seemed unsteady on his feet. (PE Tr. 22, 37.)  His face was covered with blood and dirt.  (PE Tr. 22.)  Asher offered to call 9-1-1 for him, but he told her that he just wanted his wallet.  (*Id*.)  They started to look for his wallet, but the man wandered away.  (PE Tr. 23.)  After the incident, Petitioner told Asher that they got the man's wallet and took his money.  (PE Tr. 42-43.)

Dr. Joyce DeJong performed an autopsy on the victim.  (PE Tr. 47.)  The victim was 52 years old, 5'11" tall and 203 pounds.  DeJong testified that the victim had two recent rib fractures. (PE Tr. 52.)  The victim suffered from severe coronary artery disease, which was characterized by severe narrowing of two of the major vessels that supply blood to the heart, the left anterior descending coronary artery and the circumflex branch of the left coronary artery.  (PE Tr. 52.)  The circumflex branch of the left coronary artery displayed a recent plaque rupture.  (PE Tr. 53.) Traumatic physical or emotional events can trigger a plaque rupture.  (PE Tr. 54-55.)  The victim also had a hemorrhage on the surface of his brain, but DeJong did not believe that it contributed to his death.  (PE Tr. 56.)  The drug screen identified a number of substances, including drugs for pain, antidepressants and THC, but DeJong did not believe that any of those substances contributed to the victim's death.  (PE Tr. 57-59, 60-61.)  Based upon the history provided to DeJong, the victim suffered the rupture less than two hours after the attack. (PE Tr. 62, 66-72.)  DeJong opined that the cause of death was a sudden cardiac event associated with a physical attack.  (PE Tr. 59.)  While the causal connection between the attack and the rupture weakens over time, DeJong believed with a reasonable degree of medical certainty that, under the facts and circumstances of this case, the attack caused the rupture.  (PE Tr. 59-60, 67, 71.)   If not for the attack, DeJong believed that the victim

would still be alive.  (PE Tr. 67.)  Consequently, DeJong found that the manner of death was homicide.  (P. Tr. 61.)

On August 5, 2009, a week before his trial date, Petitioner pleaded *nolo contendere* to second-degree murder.  (Plea Tr. 6-7, docket #12.)  In exchange for the plea, the prosecutor dismissed the charges for larceny from a person and conspiracy to commit larceny.  (Plea Tr. 7.) The plea agreement also included a sentence agreement that Petitioner would receive a sentence at the bottom of the guideline range, which was estimated to be 18.9 years.  (*Id.*)  For the factual basis, defense counsel provided a summary of the preliminary examination testimony.  (Plea Tr. 8-9.) Petitioner stated that he fully understood the plea agreement and the rights he was waiving by pleading guilty, and that he was pleading guilty of his own free will.  (Plea Tr. 6-7.)

At the sentencing hearing held on September 14, 2009, the trial court informed Petitioner that it was going to impose a minimum sentence of 20 years, which was greater than the sentence agreement that was part of the plea. (Sentencing Tr. 6-7, docket #13).  Consequently, the trial court offered Petitioner the opportunity to withdraw his plea.  Petitioner, however, declined to withdraw the plea and elected to proceed with sentencing.  (Sentencing Tr. 7.)  The trial court sentenced Petitioner to imprisonment of 20 to 30 years.  (Sentencing Tr. 10.)

Petitioner subsequently filed a motion to withdraw his guilty plea and for an evidentiary hearing, claiming that his attorney was ineffective for failing to recognize and investigate a possible causation defense to the homicide charge.  Alternatively, Petitioner moved for resentencing, arguing that the trial court improperly scored 50 points for Offense Variable (OV) 6, which concerns the offender's intent to kill or injure another person.  *See* MICH. COMP. LAWS § 777.36(1).  At a hearing on May 10, 2010, the trial court rejected Petitioner's sentence scoring

claim, but agreed to hold an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel.  (Motion Hr'g, 10, docket #14.)

The evidentiary hearing was held on May 27, 2010.  (Evidentiary Hr'g (EH) Tr., docket #15.) Petitioner's appointed counsel, Virginia Cairns, testified that after reviewing the police reports, witness interviews, autopsy report and preliminary examination testimony, she concluded that causation was not a viable defense in this case.  (EH Tr. 9-11.)  Cairns spoke to Powell's counsel, John Vincent, who intended to assert a causation defense, but planned to focus on a claim of self-defense. (EH Tr. 11-15, 24.)  In her discussion with Vincent, he never specifically mentioned Dr. Werner Spitz or any other medical expert.  (EH Tr. 24.)  Counsel had discussions with prosecutor about giving Petitioner a favorable plea deal in exchange for his testimony against Powell. (EH Tr. 25.)  Counsel sent a letter to Petitioner explaining the plea offer and that Petitioner would have to tell the truth if he was going to take the deal and testify at Powell's trial.  (EH Tr. 29.) When counsel met with Petitioner to discuss the plea offer, Petitioner admitted to engaging in conduct that was consistent with the police report and Barbara Jones-Asher's preliminary examination testimony.  (EH Tr. 29.)  Petitioner's admission was inconsistent with his statements to police that he was not involved in the assault or robbery of the victim.  (EH Tr. 30-31.)  In light of Petitioner's admission and his conflicting statements to the police, counsel believed that it was in her clients best interest to negotiate a plea deal.  (EH Tr. 31.)  Given the evidence in the case, counsel believed that Petitioner was at risk of being convicted of first-degree felony murder, which would carry a life sentence without the possibility of parole.  (EH Tr. 32-33.)  Petitioner's plea to second-degree murder allowed him to avoid a life sentence.  (EH Tr, 33.)

Petitioner testified that, at the time of his arrest, he was seventeen years old and had completed school through tenth grade. (EH Tr. 36.) The instant case was Petitioner's first adult felony charge. (EH Tr. 37.) Petitioner met with counsel "countless" times about his case. (EH Tr. 39.) Petitioner denied committing an offense or admitting to counsel that he had committed an offense. (EH Tr. 43.) Petitioner claimed that he only witnessed the incident involving Powell and the victim, and told counsel that would be his testimony if he took the witness stand. (EH Tr. 44-48.) At the time he pleaded guilty, Petitioner did not know that an expert witness could be called on the issue of causation. (EH Tr. 45.) Petitioner stated that if he had he known that an expert witness could have testified that his alleged acts did not cause the victim's death, he would not have pleaded guilty and would have proceeded to trial. (EH Tr. 38.)

On June 2, 2010, the trial court issued findings (docket #18) from the evidentiary hearing. (Court Finding on Defendant's Motion to Withdraw Plea, docket #18.) The court discussed that co-defendant Powell withdrew his plea to second-degree murder after the court rejected the sentence agreement. Powell proceeded to trial on two defense theories: self-defense and that the victim's death was not caused by the attack. (*Id*. at 2.) A well known forensic pathologist, Dr. Warner Spitz, who wrote a book on the subject of "murder by heart attack," testified for the defense. Spitz opined that given the time lapse between the assault and the victim's death, the victim's death could not have been caused by the stress of the assault. (*Id.* at 2-3.) However, Powell ultimately was convicted of the lesser offense of manslaughter, as well as larceny from a person and conspiracy. (*Id*. at 3.) The trial court concluded that counsel did not rendered ineffective assistance, stating:

> This Court therefore concludes that Defendant cannot establish the second element required by *Strickland*, that trial counsel's failure to pursue a defense of lack of

causation for the death of the victim resulted in "prejudice" as that term is defined in the law cited above. Even if the complained of failure of defense counsel had not occurred, even if counsel had pursued the defense of lack of causation, even if counsel had advised the Defendant not to accept the plea agreement to second degree murder and, instead to go to trial, even if the Defendant had gone to trial and presented the testimony of Dr. Spitz, who, as appellate counsel says, "wrote the book on murder by heart attack," even if Dr. Spitz had testified that the victim did not die as a result of the defendants' actions, Co-Defendant Powell's trial instructs that the defense would not have mattered, that the jury would conclude beyond a reasonable doubt, assuming the jury found against the Defendant on all other elements of the People's case, that the victim's death was caused by the actions of the Defendant. There is not a reasonable probability that the result of the case would have been different.

(*Id.*) Consequently, the trial court denied Petitioner's motion to withdraw his guilty plea.

## B.     Direct Appeal

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. His brief, which was filed by counsel on September 14, 2010, raised the same two issues as raised in this application for habeas corpus relief. (*See* Def.-Appellant's Br. on Appeal, docket #16.) The Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented. (*See* 10/15/10 Mich. Ct. App. Order, docket #16.)

Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same two claims raised before and rejected by the Michigan Court of Appeals. By order entered December 30, 1997, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Order, docket #17.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). "In *Greene*, the Court clarified that state courts must follow clearly established law as it existed 'at the time of the state-court adjudication on the merits.'" *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014). "That is, under 28 U.S.C. § 2254(d), 'clearly established Federal law' is the law at the time the original decision was made, not as [the Sixth Circuit had previously held], the law 'before the conviction became final.'" *Miller*, 642 F.3d at 644 (quoting *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.

- 8 -

*Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (Apr. 23, 2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Richter*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be

overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## Discussion

### I.        Guilty Plea/Ineffective Assistance of Counsel

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.   *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985);  *Haring v. Prosise*, 462 U.S. 306, 320 (1983);  *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claim does not challenge the power of the state to bring him into court.   Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*,

426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Petitioner contends his plea was not knowing and voluntary due to the ineffective assistance of his trial counsel. Specifically, Petitioner contends that his appointed trial attorney, Virginia Cairns, was ineffective for failing to recognize and investigate a possible causation defense to the homicide charge. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme

Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

    The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59

    It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the

adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Virginia Cairns testified that she considered the causation issue, but after reviewing the police reports, witness interviews, autopsy report and preliminary examination testimony, she concluded that causation was not a viable defense in this case. (EH Tr. 9-11.) Notably, Dr. DeJong testified at the preliminary examination that the cause of death was a sudden cardiac event associated with a physical attack. (PE Tr. 59.) While the causal connection between the attack and the rupture weakens over time, DeJong believed with a reasonable degree of medical certainty that, under the facts and circumstances of this case, the attack caused the rupture. (PE Tr. 59-60, 67, 71.) Consequently, DeJong concluded that the manner of death was homicide. (P. Tr. 61.) Cairns further testified that she spoke to co-defendant Powell's counsel, John Vincent, who intended to assert a causation defense, but planned to focus on a claim of self-defense. (EH Tr. 11-15, 24.) At the time

- 13 -

Petitioner pleaded guilty, Vincent had not mentioned Dr. Spitz or any other medical expert who was prepared to provide testimony favorable to the defendants on the issue of causation.  (EH Tr. 24.) Cairns determined that it was in her clients best interest to negotiate a plea deal.  (EH Tr. 25, 31.)

Counsel initially attempted to negotiate a favorable plea in exchange for Petitioner's testimony against co-defendant Powell.  Petitioner originally told police that he observed the incident involving Powell and the victim, but was not involved.  (EH Tr. 29-31.)  However, during to course of plea negotiations, Petitioner admitted to Cairns that he was involved. (EH Tr. 29.) Consequently, Cairns could not allow Petitioner to take the stand and provide false testimony by denying his involvement.  Given the evidence in the case, counsel believed that Petitioner was at risk of being convicted of first-degree felony murder, which would carry a life sentence without the possibility of parole.  (EH Tr. 32-33.)  In light of Petitioner's conflicting statements regarding his involvement in the offense and the risk of being convicted of first-degree felony murder, Cairns believed that the plea to second-degree murder was Petitioner's best option.  (EH Tr. 32-33.)

Petitioner argues that Cairns should have taken her investigation further by seeking out a defense expert to refute Dr. DeJong's opinion that the assault caused the victim's death.  This case presents a unique situation where, in fact, co-defendant Powell proceeded to trial and called Dr. Werner Spitz, who testified that the victim's death was not caused by the assault.  However, the jury rejected the defense by finding Powell guilty of manslaugher; a verdict that required a finding that Powell caused the victim's death.  The fact that Powell ultimately received a lower sentence than Petitioner does not render counsel's performance ineffective in this case.  By going to trial, Powell risked being convicted of first-degree felony murder, which carries a life sentence without the possibility of parole.  Petitioner's counsel made a strategic decision to avoid that risk by

negotiating a plea agreement. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). While 20 to 30 years is a long sentence, Petitioner could be released as early as thirty-seven years of age and no later than forty-seven years of age. A life sentence without parole would have been far more devastating considering Petitioner's young age at the time of his conviction. Consequently, counsel's strategic decision to negotiate a plea agreement to second-degree murder was eminently reasonable. Moreover, as discussed by the trial court, Petitioner cannot show prejudice when the jury rejected the causation defense in co-defendant Powell's case. Accordingly, the decision of the state court was certainly not an unreasonable application of *Strickland*.

II.       **Scoring of OV 6**

In his second ground for habeas corpus relief, Petitioner contends that the trial court erred by scoring 50 points for OV 6. Offense Variable 6 is the offender's intent to kill or injure another person. See MICH. COMP. LAWS § 777.36(1). Fifty points are scored if the offender had premeditated intent to kill or the killing was committed while committing or attempting to commit one of the listed felonies, which include "robbery" and "larceny of any kind." MICH. COMP. LAWS § 777.36(1)(a). Twenty-five points are scored when the offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result. MICH. COMP. LAWS § 777.36(1)(b). Ten points are scored if the offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed

for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life.  MICH. COMP. LAWS § 777.36(1)(c).  The statute further provides that the sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury.  MICH. COMP. LAWS § 777.36(2)(1).

Petitioner contends that the trial court improperly scored him as if he were guilty of first-degree murder.  Because he pleaded guilty to second-degree murder, Petitioner argues that he only should have been scored 25 points.  Had the trial court scored 25 points rather than 50 points, Petitioner claims that the guideline range would have been 180 to 300 months, instead of 225 to 375 months.  Even though the 20-year minimum sentence imposed in this case is within the lower range, Petitioner asserts that he entitled to resentencing under Michigan law.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief);  *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord  Lovely v.*

*Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras*, 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not so disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485.  Further, the trial court found that the scoring of 50 points was consistent with the agent's description of the offense in the pre-sentence report, which

- 17 -

indicated that Petitioner and his co-defendant stole the victim's wallet.  (5/10/10 Motion Hearing, 8-10, docket #14.)  Petitioner does not argue that the facts found by the court were either materially false or based on false information.  *Tucker*, 404 U.S. at 447.  Instead, Petitioner argues only that the trial court's should have scored OV 6 consistent with Petitioner's plea to second-degree murder. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. Moreover, Petitioner admits that even if the trial court had scored 25 points, instead of 50 points, his minimum sentence of 20 years would be within the guideline range.  Petitioner, therefore, cannot establish a violation of his federal due process rights.

Petitioner also claims that his trial counsel was ineffective for failing to object to the scoring of OV 6.  As set forth above, the two-prong *Strickland* standard applies to Petitioner's claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687-88.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  Petitioner cannot show that trial counsel's failure to object fell below an objective standard of reasonableness.  Both the preliminary examination and the pre-sentence report supported a finding that Petitioner and his co-defendant robbed the victim in connection with the killing, which supported a score of 50 points under MICH. COMP. LAWS § 777.36(1)(a).  Counsel's failure to make a frivolous or meritless objection does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).  Even if counsel's performance was deficient, Petitioner cannot show prejudice because, as previously discussed, even if the guidelines were recalculated with a score of

- 18 -

25 points for OV6, the sentence Petitioner received is within that recalculated range.  Petitioner,

therefore, is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition

be denied.

Dated:  August 20, 2014               /s/ Hugh W. Brenneman, Jr.
                                      HUGH W. BRENNEMAN, JR.
                                      United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).